IN THE UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH CAROLINA
FLORENCE DIVISION

| | |
|---|---|
| BARBARA JOHNSON, ) | Civil Action No.: |
| ) | |
| Plaintiff, ) | |
| ) | **COMPLAINT** |
| vs. ) | **Violation of the ADA** |
| ) | **Violation of the FMLA** |
| SMITHFIELD PACKING COMPANY, ) | |
| INCORPORATED, ) | |
| ) | **JURY TRIAL DEMANDED** |
| Defendant. ) | |
| _____ ) | |

The plaintiff above named, complaining of the acts of the defendant, states as follows:

## PARTIES AND JURISDICTION

1) That plaintiff is a resident and citizen of the County of Dillon, State of South Carolina.

2) That, upon information and belief, the defendant Smithfield Packing Company, Incorporated ("Smithfield" or "defendant") is a foreign corporation doing business and otherwise maintaining offices and agents in the County of Bladen, State of North Carolina.

3) That this court has federal question jurisdiction pursuant to 42 U.S.C. §12101, et. seq. (American with Disabilities Act or "ADA"), 29 U.S.C. § 2601, et. seq. (Family Medical Leave Act or "FMLA"), and 28 U.S.C. §1331.

4) That venue for all causes of action stated herein lies in the district of South Carolina, Florence Division, in that pursuant to 28 U.S.C. § 1391(b), the parties reside in this district, and a substantial part of the events giving rise to plaintiff's claims occurred here.

**CONDITIONS PRECEDENT**

5) That plaintiff has exhausted all administrative remedies and conditions precedent, including timeliness, deferral and all other jurisdictional requirements necessary for the maintenance of the foregoing action, all of which are more fully described below.

6) That at all relevant times defendant employed fifteen (15) or more employees and, as such, is an "employer" as defined by the ADA and is otherwise subject to the ADA.

7) That on or about September 10, 2009, and as a result of defendant's discriminatory conduct, all of which is more fully described below, plaintiff filed a complaint with the Equal Employment Opportunity Commission ("EEOC") alleging discrimination based upon disability and/or perceived disability under the ADA.

8) That on or about April 1, 2011, plaintiff received a notice of right to sue from the EEOC regarding the complaint described in Paragraph 7 above.

9) That plaintiff has timely filed the foregoing action within ninety (90) days of the date on which she received the notice of right to sue described above in Paragraph 8.

**FACTS**

10) That plaintiff hereby repeats and realleges each and every allegation contained in Paragraphs 1 through 9 hereinabove as fully as if set forth verbatim.

11) That on or about May 27, 2008 plaintiff was hired as a production worker by the defendant.

12) That in said position plaintiff's job involved inspecting meat on a conveyor belt. First plaintiff performed her inspections from a platform, then later she did it from the floor.

13) That plaintiff performed her job duties at defendant in an above-satisfactory fashion and otherwise maintained an excellent employment record there. In this regard, plaintiff received at least two (2) favorable performance evaluations; she received raises; she was never disciplined; and, her supervisors told her she did a good job.

14) That plaintiff is an insulin-dependent diabetic. Plaintiff attempts to control her condition through shots and pills.

15) That in or around November or December of 2008, plaintiff began to become ill at work as a result of her diabetes. Apparently, despite the use of her medication, plaintiff's insulin levels became high which, in turn, caused plaintiff to become weak and "shaky" and to experience blurred vision while working. A couple times, plaintiff actually fell on the floor at work.

16) That when plaintiff became ill, she had to get a shot and then wait around 1 to 2 hours for her levels to fall into place.

17) That when plaintiff first started to become ill at work, defendant would send plaintiff home and not allow her to return to work unless she presented a doctor's note which affirmed she was well enough to work. This resulted in plaintiff missing more work than was necessary, as she only needed to take a break before she could return to doing her job. Plaintiff did not have to go home for a day or two, or however long it took her to obtain a doctor's note.

18) That after plaintiff objected to repeatedly being sent home, defendant agreed to stop sending plaintiff home each time she experienced a diabetic-related illness at work.

19) That on or about February 26, 2009, plaintiff's physicians changed her medications in an attempt to treat the diabetic-related symptoms she was experiencing at work.

20) That at first the new medications worked well. However, soon the new medications were causing plaintiff's insulin levels to drop too low which, in turn, would cause

her to become sick at work – i.e., become shaky, weak, experience blurred vision, etc. This occurred probably 3 or 4 times.

21) That each time this happened, plaintiff would either be carried to the company clinic or taken there by wheelchair. At the clinic, plaintiff would get something to eat, wait, and then return to work.

22) That on or about April 15 or 16, 2009, plaintiff again got sick at work. On that occasion, one of plaintiff's supervisors, Brian Brewer ("Brewer"), carried her to the clinic.

23) That at the clinic, plaintiff was laid out on the examination table. Plaintiff was shaking and throwing up and otherwise experiencing the symptoms of her diabetes.

24) That plaintiff was sent home that day and told not to return until she could provide a doctor's excuse. Of course, plaintiff visited her physician and was given a doctor's note advising she could return to work on or about April 21, 2009.

25) That on or about April 21, 2009, plaintiff returned to work. However, on that day plaintiff became sick in the locker room and plaintiff was again taken to the clinic and then sent home. This time, plaintiff obtained a doctor's note stating she could return to work May 12, 2009.

26) That while plaintiff was out, she called into work every day.

27) That also while plaintiff was out, plaintiff was seen by a specialist who made the necessary changes to plaintiff's medication.

28) That by on or about May 11 or 12, 2009, plaintiff was fully able to return to work.

29) That since that time the symptoms of plaintiff's condition have been duly controlled.

4

30) That when plaintiff reported back to work on or about May 11, 2009, plaintiff's badge did not work. When plaintiff inquired as to why her badge did not work, a clerk advised plaintiff that she had been fired. Plaintiff then asked to speak to a human resource representative.

31) That shortly thereafter, plaintiff spoke to Tatiana Aguoya ("Aguoya"). Aguoya advised plaintiff that plaintiff was fired for being out of work too long. In the course of the conversation, Aguoya asked plaintiff "If you are sick for a year, what are we supposed to do – hold your job for you for a year?"

32) That at the same time, defendant has a point system for attendance that states if an employee accumulates 12 points, they are subject to termination. Plaintiff only had 6.5 or 7 points under the policy, and at least half of those points were related to her diabetes.

33) That plaintiff then went to the plant manager, Tammy Russ ("Russ"). Russ did not understand why plaintiff was being terminated. Russ and plaintiff went back to Aguoya. Aguoya stated that her decision was final, but that she would check with her supervisor and get back to plaintiff. However, no one ever got back to plaintiff.

34) That later plaintiff was advised that she had been terminated for not calling in one day when plaintiff was out sick. Of course, that allegation is false.

## FOR A FIRST CAUSE OF ACTION: VIOLATION OF THE ADA

35) That plaintiff hereby repeats and realleges each and every allegation contained in Paragraphs 1 through 34 hereinabove as fully as if set forth verbatim.

36) That as alleged above, at all pertinent times defendant employed over fifteen (15) employees and, thus, is an "employer" as defined by the ADA and otherwise subject to that Act.

5

37) That as a result of plaintiff's diabetes, the plaintiff is disabled and/or has been perceived as disabled by the defendant as defined by the ADA.

38) That plaintiff is limited in one or more major life activity, namely the ability to walk, stand, see, lift, bend stoop, speak, breathe, eat, concentrate, think and work.

39) That despite the above, plaintiff could perform the essential functions of her job, with or without reasonable accommodations, and, at the time of her discharge, plaintiff was performing her job in a manner that met defendant's reasonable expectations.

40) That despite the above, defendant fired plaintiff because plaintiff is disabled and/or because defendant perceived plaintiff to be disabled.

41) That defendant violated the ADA by refusing to accommodate plaintiff by giving her brief leave and limited break time at work and by firing her all because plaintiff is disabled and/or because she was perceived as being disabled by defendant.

42) That as a result of defendant's actions as set forth above, plaintiff has been damaged in the form of lost back and future wages, income and benefits, expenses associated with finding other work, severe psychological harm, emotional distress, pain and suffering, loss of enjoyment of life, anxiety, depression, inconvenience, mental anguish, embarrassment, humiliation, loss of professional standing, character and reputation, physical and personal injuries and further seeks attorney's fees and costs and prejudgment interest.

43) That the defendant's actions as set forth above were undertaken intentionally, willfully, wantonly, recklessly, maliciously and with utter disregard for the federally protected rights of the plaintiff, and therefore plaintiff is entitled to recover punitive damages from the defendant.

## FOR A SECOND CAUSE OF ACTION:
## VIOLATION OF THE FMLA
## (29 U.S.C. §§ 2601 – 2654)

44) That plaintiff hereby repeats and realleges each and every allegation contained in Paragraphs 1 through 43 hereinabove as fully as if set forth verbatim.

45) That pursuant to the Family and Medical Leave Act of 1993 ("FMLA"), plaintiff had been employed with defendant for over 12 months, had provided over 1,250 hours of service to defendant during the 12 months prior to her leave and was otherwise employed at a work site where 50 or more employees are employed by defendant within 75 miles of the work site. Therefore, plaintiff is an "eligible" and covered employee as defined by the Act.

46) That defendant is engaged in commerce and/or an industry or activity effecting commerce and employs 50 or more employees each working day during each of 20 or more work weeks in the current or preceding calendar year. As such, defendant is a covered employer as defined by the Act and the parties herein are covered by and subject to said Act.

47) That plaintiff performed her job duties with defendant in an above-satisfactory fashion and in a manner that met the defendant's reasonable expectations.

48) That as alleged above, plaintiff suffered from a serious health condition as defined by the FMLA, in that she suffered from diabetes; she was taken out of work several times for extended periods of time; she repeatedly saw her physicians before, during and after her leave; she was prescribed medications; and her conditions were chronic.

49) That plaintiff exercised her rights under the FMLA by requesting and taking FMLA leave and/or by taking leave that was covered or should have been covered by the FMLA.

50) That defendant fired plaintiff without warning, notice or cause and for false reasons, all because plaintiff exercised her rights under the FMLA by requesting and taking FMLA leave.

51) That as such, the defendant has violated the FMLA.

52) That as a result of defendant's actions as set forth above, plaintiff has suffered damages in the form of lost back and future wages, income and benefits, expenses associated with finding other work, economic injury, attorney's fees and costs and prejudgment interest.

53) That moreover, defendant's actions as set forth above were undertaken in a willful, reckless, bad faith, intentional and wanton manner and in utter disregard for plaintiff's rights and, therefore, plaintiff is entitled to recover liquidated damages from defendant. Furthermore, the defendant knew or showed reckless disregard for whether its conduct was prohibited by the FMLA.

WHEREFORE, plaintiff prays for the following relief against the defendant:

(a) As to the plaintiff's First Cause of Action, for such an amount of actual and special damages as the trier of fact may find (including lost back and future wages, income and benefits, expenses associated with finding other work, severe psychological harm, emotional distress, pain and suffering, loss of enjoyment of life, anxiety, depression, inconvenience, mental anguish, embarrassment, humiliation, loss of professional standing, character and reputation, physical and personal injuries), punitive damages, prejudgment interest, the costs and disbursements of this action, including reasonable attorney's fees and for such other and further relief as the court deems just and proper;

(b) As to plaintiff's Second Cause of Action, for such an amount of actual and special damages as the trier of fact may find, (including lost back and future wages, income and

8

benefits, expenses associated with finding other employment and economic injury), liquidated damages, prejudgment interest, the costs and disbursements of this action, including reasonable attorney's fees, and for such other and further relief as the court deems just and proper.

        HITCHCOCK & POTTS

        By: s/A. Christopher Potts
        Federal ID No.: 5517
        31 Broad Street (P.O. Box 1113)
        Charleston, SC 29401 (29402)
        Telephone: (843) 577-5000
        Fax: (843) 722-8512
        E-Mail: hitchp@bellsouth.net
        *Attorneys for the Plaintiff*

Charleston, South Carolina
June 20, 2011